PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ALLEN BINSTOCK, | ) | |
| | ) | CASE NO. 5:16CV1060 |
| Petitioner, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| DHSC, LLC, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Respondent. | ) | **ORDER** [Resolving ECF No. 1] |

Pending before the Court is Petitioner Allen Binstock's, Regional Director, Region 8, for and on behalf of the National Labor Relations Board ("NLRB"), Petition for Injunction Under Section 10(j) of the National Labor Relations Act ("the NLRA" or "the Act"). ECF No. 1; *see also* 29 U.S.C. § 160(j). Respondent DHSC, LLC objects to the Petition. ECF No. 16. The Court granted Petitioner's Motion for judicial resolution based on the administrative record. ECF No. 28. The Court is fully informed having reviewed the record and that submitted by the parties. For the following reasons, the Court grants the Petition and issues the requested injunctive relief.

## I. Background

On August 22, 2012, Respondent DHSC, LLC, d/b/a Affinity Medical Center entered into a Consent Election Agreement ("CEA") with the National Nurses Organizing Committee ("the Union"). ECF No. 16-1. Respondent and the Union agreed that the representation proceedings would be subject to the authority of the Regional Director. *Id.* at PageID #: 498. The Regional

Director approved the CEA, and an election took place on August 29, 2012.  *Id.* at PageID #: 470.  At the conclusion of the election, seven ballots were challenged by either Respondent or the Union.  *Id.*  The Regional Director resolved the challenged ballots, ruling that four of the seven ballots should opened and counted.  ECF No. 16-2 at PageID #: 501–03.  Ultimately, the Union gained the majority of the votes, and it was certified as the exclusive bargaining representative of the employees.  ECF Nos. 16-3, 16-4.  The bargaining unit is defined as:

> All full-time and regular part-time, and per diem Registered Nurses, including those who serve as relief charge nurses, employed by the Employer at its 875 Eighth Street N.E., Massillon, Ohio facility, but excluding all other employees, including managers, confidential employees, physicians, employees, guards and supervisors as defined in the Act, as amended.

ECF No. 16-4 at PageID #: 509.

Over the course of the Union and Respondent's relationship, the Union filed several charges against Respondent, alleging that Respondent had engaged in various unfair labor practices, in violation of Sections 8(a)(1) and (5) of the NLRA.  ECF No. 1 at PageID #: 2–3, ¶ 4. These charges were referred to Petitioner as the Regional Director of Region 8 of the National Board of Labor Relations, who consolidated the charges.  *Id.* at PageID #: 3, ¶ 5.  Petitioner filed the instant Petition for temporary injunctive relief under Section 10(j) of the NLRA.  ECF No. 1.

## II.  Standard of Review

Section 10(j) (29 U.S.C. § 160(j)) provides:

> The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order.  Upon the filing of any such petition the court . . .  shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

This injunctive relief preserves the case's status quo while underlying administrative proceedings are pending. *Schaub v. West Michigan Plumbing & Heating, Inc.*, 250 F.3d 962, 970 (6th Cir. 2001). The court's inquiry is limited. The district court does not resolve factual disputes, make credibility determinations, or decide the merits of the unfair labor practice charges. *Id.* (citing *Fleischut v. Nixon Detroit Diesel, Inc.*, 859 F.2d 26, 28 (6th Cir. 1998)).

When deciding to issue an injunction, the district court first evaluates whether there is reasonable cause to believe that a violation of the Act has been committed. *Ahearn v. Jackson Hosp. Corp.*, 351 F.3d 226, 234–35 (6th Cir. 2003). Petitioner's burden of establishing reasonable cause is "relatively insubstantial." *Id.* (citing *Schaub*, 250 F.3d at 969). Petitioner "need not prove a violation of the NLRA nor even convince the district court of the validity of the Board's theory of liability; instead, he need only show that the Board's 'theory is substantial and not frivolous.'" *Schaub*, 250 F.3d at 969 (citing *Fleischut*, 859 F.2d at 28). Petitioner must also show that "the facts of the case are consistent with the Board's legal theory." *Id.* (citing *Fleischut*, 859 F.2d at 29). The court does not resolve conflicts in the evidence. Instead, as long as facts exist that could support the Board's theory of liability, the district court may find reasonable cause. *Id.* (citing *Fleischut*, 859, F.2d at 29 and *Gottfried v. Frankel*, 818 F.2d 485, 494 (6th Cir. 1987)).

Once a court has determined that there is reasonable cause to believe that a violation of the Act has been committed, the court determines whether the requested injunctive relief is just and proper. *Ahern*, 251 F.3d at 234–35. "In determining whether injunctive relief is just and proper, the legal standard a district court must apply is whether such relief is 'necessary to return

the parties to the status quo pending the Board's proceedings in order to protect the Board's remedial powers under the NLRA, and whether achieving status quo is possible.'" *Kobell v. United Paperworkers Int'l Union, AFL-CIO, CLC*, 965 F.2d 1401, 1410 (6th Cir. 1992) (quoting *Gottfried v. Frankel*, 818 F.2d 485, 495 (6th Cir.1987)). "[Status quo] is defined as that existing *prior* to the adoption of the allegedly unfair labor practice." *Id.* (emphasis in the original). The relief granted must "only [be] that reasonably necessary to preserve the ultimate remedial power of the Board and is not to be a substitute for the exercise of that power." *Ahern*, 351 F.3d at 239.

### III. Reasonable Cause

Petitioner contends that there is reasonable cause to believe that Respondent failed and refused to provide the Union with information it requested; unilaterally changed the terms and conditions of employment; failed and refused to bargain with the Union over the termination of two employees; and has been engaging in surface bargaining. ECF No. 1 at PageID #: 6–7, ¶ 6. Each argument is discussed in turn.

#### A. Request for Information

On August 3, 2015, Respondent's parent entity, Community Health Systems, Inc., ("CHS") announced that it was spinning off thirty-eight hospitals, including Respondent, into a new entity, Quorum Health Corporation ("QHC"). ECF No. 37-7 at PageID #: 3907–08. Respondent's Vice President of Human Resources notified the Union of this spin-off. *Id.* at PageID #: 3907. On September 21, 2015, the Union sent Respondent a list of questions related to the spin-off. ECF No. 37-8 at PageID #: 3914–15. The Union requested information concerning QHC workplace rules and employment manuals, healthcare benefits, disability and

4

life insurance plans, and retirement benefits. *Id.* The Union reiterated its request on several occasions. ECF No. 37-9 at PageID #: 3917–18 (October 21, 2015, October 30, 2015, and November 6, 2015 requests); *id.* at PageID #: 3920 (November 23, 2015 request); *id.* at PageID #: 3924 (January 4, 2016 request); ECF No. 37-11 at PageID #: 3931 (April 15, 2016 request). The Union also made oral requests at the November 5, 2015 and April 29, 2016 bargaining sessions. ECF No. 37-1 at PageID #: 3880, ¶¶ 20–21 (Affidavit of Vanessa Sylvester, the Union's bargaining representative). After Respondent was spun-off into QHC, the Union made two more requests for information. *Id.* at PageID #: 3881–82, ¶¶ 24, 26 (requests made on May 24, 2016 and July 6, 2016). There is no evidence that Respondent has provided the Union with this information.

Under sections 8(a)(5) and 8(d) of the National Labor Relations Act, it is an unfair labor practice to refuse to bargain with a union representative. 29 U.S.C. §§ 158(a)(5), 158(d). Included in the employer's duty to bargain is a duty to "provide information that is needed by the bargaining representative for the proper performance of its duties." *United Paperworkers Intern. Union v. N.L.R.B.*, 981 F.2d 861, 865 (6th Cir. 1992) (citing *N.L.R.B. v. Acme Indus. Co.*, 385 U.S. 432, 435–36 (1967)). This duty to disclose information is evaluated under a "discovery type standard," and the requested information "need only be relevant and useful to the union in fulfilling its statutory obligations [as bargaining representative.]" *E. Tennessee Baptist Hosp. v. N.L.R.B.*, 6 F.3d 1139, 1143 (6th Cir. 1993) (citing *Detroit Edison Co. v. N.L.R.B.*, 440 U.S. 301, 314 (1979)). Information concerning the bargaining unit is presumptively relevant. *E.I. DuPont de Nemours & Co. v. N.L.R.B.*, 744 F.2d 536, 538 (6th Cir. 1984). The union bears the burden

of demonstrating that information not concerning the bargaining unit is relevant. *Id.* (citing

*N.L.R.B. v. Rockwell-Standard Corp.*, 410 F.2d 953, 957 (6th Cir. 1969)). "The Board need only

find a 'probability that the desired information [is] relevant . . . and that it would be of use to the

union in carrying out its statutory duties and responsibilities.'" *Id.* (quoting *Acme Indus. Co.*,

385 U.S. at 437).

In this case, the Union seeks information both related and unrelated to the bargaining

unit. The Union's requests for information concerning QHC's work rules, employment manuals,

persons with authority to review these policies, staffing plans and persons with the ability to

review these staffing plans, benefits, and administrative services are of concern to the bargaining

unit and are presumptively reasonable. As for the Union's other requests, the Union contends

that this information is relevant, as it concerns QHC, its organizational structure, and its "key

players," and that this information is "integral for the Union to perform its duties as the exclusive

collective bargaining representative of the employees." ECF No. 6 at PageID #: 354. The

Union has demonstrated that it has a reasonable, objective basis for this information. The

information is, therefore, relevant.

Respondent does not object to the relevance of these documents, but instead contests the

Union's argument that the request was ever made. Respondent argues that the Union has only

ever demanded information from CHS, and argues, without reference to supporting legal

authority, that the Union should have specified that it sought information from Respondent itself.

ECF No. 43 at PageID #: 4370–72.

In one of Respondent's examples, Union representative Vanessa Sylvester emailed Respondent's representative, Don Carmody, as well as two other hospitals' respresentatives, seeking the information at issue. Mr. Carmody replied that she must "advise whether [she was] asking that the Hospitals provide you with the information being sought concerning the Quorum transaction, in order that the Hospitals can provide you with an informed response in such circumstances." ECF No. 37-9 at PageID #: 3920. In a response directed solely to Mr. Carmody, Ms. Sylvester stated that "[i]f you intend to make a substantive response on behalf of the CHS Hospitals you represent, you should do so immediately." *Id.* Respondent argues that this email was insufficient to put Mr. Carmody on notice that the Union sought the information from Respondent. ECF No. 43 at PageID #: 4371–72. This argument strains credulity. While, it is not too fanciful to acknowledge that the recipient of an emailed request may reasonably assume that the request is directed at himself. When, however, as in this case, Ms. Sylvester emailed Mr. Carmody directly, asking for a response "on behalf of the CHS Hospitals [he] represent[ed]," Mr. Carmody was clearly on notice that she sought a response from Respondent.

Morever, given the Union's persistence in securing responses from Respondent's representatives—it made requests on September 21, 2015, October 21, 2015, October 30, 2015, November 6, 2015, November 23, 2015, January 4, 2016, April 15, 2016, May 24, 2016, and July 6, 2016—it was unreasonable for Respondent to assume that the Union did not want Respondent to tender the information. Furthermore, at a November 5, 2015 bargaining session, Respondent informed the Union that the information was "on its way," indicating that it was the proper party

(5:16CV1060)

from which to seek the information.  ECF No. 29 at PageID #: 878; ECF No. 37-9 at PageID #: 3917.

For these reasons, the Court finds that, despite being on notice of the Union's request, there is reasonable cause to believe that Respondent failed to respond, in violation of section 8(a)(5) and 8(d) of the National Labor Relations Act.

### B.  Unilateral Implementation of Benefits

In November 2015, Respondent announced that it would unilaterally implement "QHC BenefitsPlus," a supplemental benefit program, beginning January 1, 2016.  ECF No. 37-1 at PageID #: 3882–83; *see generally* ECF No. 37-14 (Affinity Medical Center Benefits Guide 2016).  This program offers access to and discounts on automobile and home insurance, long-term care insurance, and transfer of retirement plan assets in employees' current 401(k) plans to a new retirement plan sponsored by QHCCS, LLC, a subsidiary of QHC.  ECF No. 37-1 at PageID #: 3882–84.  The 401(k) transfer required a "blackout period" from January 4, 2016 through January 18, 2016, which prevented employees from changing investment allocations of new contributions; transferring retirement funds among investment options; requesting plan loan payouts; and making distributions and taking withdrawals.  *Id.* at PageID #: 3884; ECF No. 37-20 at PageID #: 4022.  The Union did not receive notice of these changes, and was not given the opportunity to bargain over the changes prior to their implementation.  ECF No. 37-1 at PageID #: 3885.

"An employer may not unilaterally change its employees' wages or other working conditions when it is subject to the statutory duty to bargain with a designated representative of

8

its employees." 29 U.S.C. § 158(a)(1), (5); *N.L.R.B. v. Allied Prods. Corp., Richard Bros. Div.*, 548 F.2d 644, 652 (6th Cir. 1977) (citing *N.L.R.B. v. Katz*, 369 U.S. 736 (1962) and *N.L.R.B. v. McCann Steel Co.*, 448 F.2d 277 (6th Cir. 1971)). An employer seeking to unilaterally change terms and conditions of employment that are mandatory subjects of bargaining must notify the union and offer the union the opportunity to bargain over these changes. *Katz*, 369 U.S. at 746, n.12. "A unilateral change does not violate the Act unless that change is material, substantial, and significant, and has a real impact on, or causes a significant detriment to, the employees or their working conditions." *Whitesell Corp.*, 357 NLRB 1119, 1173 (2011) (citing *Golden Stevedoring Co.*, 335 NLRB 410, 415 (2001); *Outboard Marine Corp.*, 307 NLRB 1333, 1339 (1992), *enfd. mem.* 9 F.3d 113 (7th Cir. 1993)).

Respondent unilaterally offered employees access to its "QHS Benefits Plus" program without providing the Union with notice and an opportunity to bargain over these benefits. Respondent protests that Petitioner has not demonstrated that these benefits "play a sizeable role in even one RN's employment relationship with Affinity," or that any of the nurses were harmed by the blackout period. ECF No. 43 at PageID #: 4264–67. Employer-provided benefits are, however, some of the most important terms of employment for many employees. Moreover, employee discount programs and 401(k) plans are mandatory subjects of bargaining, and changes to these benefits have a real, palpable impact on employees. Respondent cannot avoid its duty to bargain by unilaterally implementing benefits.

Accordingly, the Court finds that there was reasonable cause to believe that Respondent violated the Act by unilaterally implementing these benefit changes.

**C. Terminations of Michelle Hastings and Tara Magrell**

On August 31, 2015, Respondent informed the Union that it intended to suspend bargaining unit nurse, Tara Magrell. ECF No. 31-1 at PageID #: 3878. On September 3, 2016, Respondent notified the Union that it was prepared to provide relevant information and bargain over the suspension, but required the Union to first indemnify Respondent against future defamation claims. *Id.* On November 12, 2015, Respondent informed the Union of its intent to terminate Ms. Magrell. *Id.* at PageID #: 3877.

On September 2, 2015, Respondent notified the Union that it intended to terminate bargaining unit nurse, Michelle Hastings. *Id.* at PageID #: 3875. Ms. Hastings was not on the bargaining team, but supported the Union by attending meetings and events, and wearing pro-Union buttons. *Id.* Again, Respondent declined to bargain without indemnification. *Id.* at PageID #: 3876.

The Union rejected Respondent's demands for indemnification, and requested information relevant to the suspensions and terminations. *Id.* There is no evidence that Respondent has provided the Union with this information, and both employees were terminated. Respondent maintains that indemnification is necessary, citing a defamation suit over the termination of another employee, Ann Wayt. ECF No. 16 at PageID #: 480–81; ECF No. 43 at PageID #: 4368–69; ECF No. 55 at PageID #: 6171.

Under sections 8(a)(5) and 8(d) of the National Labor Relations Act, it is an unfair labor practice to refuse to bargain with a union representative over mandatory subjects of bargaining. 29 U.S.C. §§ 158(a)(5), 158(d). The termination of employees is a mandatory subject of

bargaining. *See Id.* at § 158(d) (specifying that "wages, hours and other terms and conditions of employment" are mandatory subjects of bargaining).

Respondent does not provide legal authority to support its argument that fear of legal action excuses an employer's duty to bargain. Furthermore, the Fourth Circuit has held that an indemnity provision is a non-mandatory subject of bargaining. *N.L.R.B. v. Davison*, 318 F.2d 550, 554 (4th Cir. 1963) *enf'g* 136 NLRB 742, 745–47 (1962). Accordingly, by insisting on an indemnity proposal, the employer violated its duty to bargain in good faith. *Id.*; *see also N.L.R.B. v. Wooster Div. of Borg-Warner*, 356 U.S. 342, 349 (1958) (insistence on a non-mandatory subject, "is, in substance, a refusal to bargain about the subjects that are within the scope of mandatory bargaining."). Respondent's behavior in this case is similar to that of the employer in *Davison*—by insisting on indemnity, Respondent fails to bargain in good faith over the employees' terminations.

Therefore, the Court finds that there is reasonable cause to believe that Respondent has violated the Act by failing to bargain in good faith over these employees' terminations.

### D. Surface Bargaining

At the October 6, 2015 bargaining session, Respondent made a comprehensive package proposal to the Union. ECF No. 30-1 at PageID #: 2498–99, 2601–02. The Union rejected the proposal. *Id.* at PageID #: 3262–64. In particular, the Union objected to the proposal's broad management rights clause, provisions waiving the Union's right to bargain over modifications or termination of health insurance and retirement benefits, and a provision granting Respondent the right to nullify the collective-bargaining agreement and the Union's certification if the United

(5:16CV1060)

States Supreme Court invalidated neutrality agreements. *Id.* at PageID #: 2255, 3264–66; ECF No. 38-1 at PageID #: 4054–55.

The Union made counter-proposals on July 6, 2016 and October 11, 2016, both of which were rejected. ECF No. 38-1 at PageID #: 4062–65. Respondent's negotiator informed the Union that he was unwilling to discuss individual proposals. *Id.* at PageID #: 4064. After a year and five months of refusing to bargain, Respondent made its first offer—proposing to remove a provision related to neutrality agreements. ECF No. 56 at PageID #: 6235–36; *see also* ECF No. 55-1 (Respondent's Revised Package Proposal). Respondent has not altered its stance on the majority of the contested terms of the proposal. ECF No. 56 at PageID #: 6235–36.

Under sections 8(a)(5) and 8(d) of the NLRA, it is an unfair labor practice to refuse to bargain with a union representative. 29 U.S.C. §§ 158(a)(5), 158(d). The Act defines collective bargaining as

> the performance of the mutual obligation of the employer and the representatives of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party[.]

*Id.* at § 158(d). Although parties must bargain, the Act "does not compel either party to agree to a proposal or require the making of a concession." *Id.*

An employer cannot satisfy the duty to collectively bargain by engaging in "surface bargaining," *i.e.* feigning bargaining without an intent to actually come to an agreement. To determine whether a party is engaging in surface bargaining, the Board should looks at "the totality of the conduct, both at and away from the bargaining table." *In Re Pub. Serv. Co. of*

*Oklahoma*, 334 NLRB 487 (2001) (citing *Overnite Transportation Co.*, 296 NLRB 669, 671

(1989), *enfd.* 938 F.2d 815 (7th Cir. 1991) and *Atlanta Hilton & Tower*, 271 NLRB 1600, 1603

(1984)). The Board also considers various factors, such as "delaying tactics, the nature of the

bargaining demands, unilateral changes in mandatory subjects of bargaining, efforts to bypass the

union, failure to designate an agent with sufficient bargaining authority, withdrawal of

already-agreed-upon provisions, and arbitrary scheduling of meetings." *Regency Svc. Carts, Inc.*

*& Shopmen's Local Union No. 455 Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers,*

*AFL-CIO*, 345 NLRB 671 (2005). A delaying party need not engage in each of these factors. *Id.*

Instead, a party will be found to have violated the Act when " its conduct in its entirety reflects

an intention on its part to avoid reaching an agreement." *Id.* at 671–72.

In this case, Petitioner has demonstrated reasonable cause to believe that a violation of the

Act has been committed. Generally, Respondent has been unwilling to alter its October 5, 2015

package proposal. ECF No. 56 at PageID #: 6233. Although driving a hard bargain is not

enough to constitute surface bargaining, this stubbornness, combined with Respondent's other

actions, demonstrates "an intention on its part to avoid reaching an agreement." *Regency*, 345

NLRB at 671–72. For example, Respondent has insisted on a broad management rights, which

would give it unilateral control over terms and conditions of employment, and unilateral

discretion to reduce or eliminate medical and retirement benefits. *See Reichhold Chemicals*, 288

NLRB 69, 71 (1988) (discussing *NLRB v. Herman Sausage Co.*, 275 F.2d 229 (5th Cir. 1960)

and *A-1 King Size Sandwiches*, 265 NLRB 850 (1982), in which courts found surface bargaining

when the employer was insistent on a broad management rights clause, in addition to other

anti-bargaining behavior).  Moreover, Respondent's representative has made various assertions indicating its reluctance to come to an agreement, insisting, for example, that it would not change "one damn word" of its package proposal, ECF No. 54-7 at PageID #: 5169, rebuffing a counterproposal by stating that they would not "nickel and dime" the contract, *id.* at PageID #: 5173, and refusing to discuss individual proposals, *id.*

Respondent's actions away from the bargaining table, as described above, also indicate its bad-faith.  Respondent inappropriately insisted on an indemnification agreement as a condition to furnishing information; refused to provide requested information; and unilaterally implemented benefits.  Furthermore, Respondent unilaterally discontinued its practice of granting annual merit wage increases.  ECF No. 6 at PageID #: 357.  Although Respondent makes various efforts to demonstrate evidence of its good faith, ECF No. 40 at PageID #: 4087, 4088, 4089–90; ECF No. 40-1 at PageID #: 4099, ¶ 3, a court does not resolve factual disputes, make credibility determinations, or decide the merits of the unfair labor practice charges.

Respondent also argues that it refused to bargain with the Union because it did not agree with the Regional Director's rulings during the course of the representation proceedings and disputed the validity of the certification.  ECF No. 16 at PageID #: 472–73.  Respondent challenges the Union's certification because it was issued during a period of time the Board lacked the quorum required by Section 3(b) of the National Labor Relations Act.  *Id.*  Petitioner counters that, because Respondent ultimately recognized and began the bargaining process, it has waived its right to challenge the Union's certification now.

Generally, an employer that engaged in bargaining or otherwise recognizes a union waives the right to obtain judicial review of the representation proceedings taking place before the agency. *N.L.R.B. v. Precision Indoor Comfort, Inc.*, 456 F.3d 636, 638 (6th Cir. 2006) (citing *Maremont Corp. v. N.L.R.B.*, 177 F.3d 573, 576 (6th Cir. 1999)). Challenges such as the one at hand are not subject to such waiver requirements, however. "Challenges to the composition of an agency can be raised on review even when they are not raised before the agency." *Hospital of Barstow, Inc. v. N.L.R.B.*, 820 F.3d 440, 443 (D.C. Cir. 2016) (citing *UC Health v. N.L.R.B.*, 803 F.3d 669 (D.C. Cir. 2015)).

Although the Board lacked a quorum at the time of the election, there is reasonable cause to believe that the certification is valid. Although not binding on this case, the Fourth Circuit Court of Appeals held that Regional Directors may conduct elections based on the consent of the parties at times when the Board lacks a quorum. *See N.L.R.B. v. Bluefield Hosp. Co., LLC*, 821 F.3d 534, 542–44 (4th Cir. 2016). Because the parties in this case consented to the Regional Director's authority to issue a final decision regarding the election, the Court declines to find that this reason excuses Respondent's inaction.

Accordingly, the Court finds that there are substantial legal theories and sufficient evidence to show that there is reasonable cause to find that Respondent has violated Section 8(a)(1) and (5) of the NLRA by engaging in surface bargaining.

## IV.  Just and Proper

Once a court has determined that there is reasonable cause to believe that a violation of the Act has been committed, the court determines whether the requested injunctive relief is just

15

and proper.  *Ahern*, 251 F.3d at 234–35.  A court must consider whether injunctive relief is

"necessary to return the parties to the status quo pending the Board's processes in order to protect

the Board's remedial powers under the NLRA, and whether achieving status quo is possible."

*Kobell v. United Paperworkers Intern.*, 965 F.2d 1401, 1410 (6th Cir. 1992) (quoting *Frankel,*

*818 F.2d 495*).

 Petitioner argues that employee support has waned, highlighting "a marked decline in

union meeting attendance, the noticeable loss of core union supporters, [and] the reluctance of

union-supporting employees to step up as union leaders[.]"  ECF No. 42 at PageID #: 4352; *see*

*also* ECF No. 29 at PageID #: 883–885.  For example, although thirty nurses were willing to

accept leadership roles in 2012, only four nurses were willing to be union leaders in 2016.  ECF

No. 29 at PageID #: 885.  Similarly, although twenty to thirty employees regularly attended union

meetings in 2012, only five nurses attended the January 2016 meeting, and only three attended

the February 2016 meeting.  *Id.* at PageID #: 885–86.  Moreover, despite being certified in 2012,

the Union has been unable to sign an initial collective bargaining agreement.  "Courts have found

employees to be "highly susceptible" to unfair labor practices under such circumstances."

*Calatrello v. Gen. Die Casters, Inc.*, No. 1:10 CV 2421, 2011 WL 446685, at *7 (N.D. Ohio Jan.

11, 2011) (citing *Ahearn*, 351 F.3d at 239).  Indeed, employees have expressed "universal

frustration" and a "sincere belief that the bargaining process is futile and that they will never see

the benefits of collective bargaining."  ECF No. 42 at PageID #: 4352.

 Respondent argues that Union support remains strong, and that the Union has engaged in

advocacy on behalf of the nurses.  ECF No. 40 at PageID #: 4903.  For example, the Union has

circulated flyers with pictures of nurses, demonstrating that nurses feel comfortable openly and publicly supporting the union. *Id*. In one flyer, the Union noted that nurses were prepared to vote to authorize a strike. *Id*. Respondent also argues that it would be impractical to reverse the transfer the nurses' retirement plans from CHS to a new plan sponsored by QHCCS, LLC, a subsidiary of Quorum Health. ECF No. 16 at PageID #: 489–90. This transfer would require a retroactive amendment of the CHS Standard 401(k) Plan. *Id*. at PageID #: 490. Because only a corporate sponsor of the CHS Plan can make amendments to the plan, and Respondent is no longer affiliated with CHS, Respondent does not have authority to make such an amendment. *Id*.

In this case, the status quo is a workplace in which the Union's reputation has not been affected by its inability to bargain with Respondent. With the exception of the recision of transfer of retirement plan assets, the Court finds that injunctive relief is proper. Although Respondent protests that it is already legally obligated to bargain, and an injunction will not change that obligation, an injunction will mandate that Respondent meet with the Union in person. Moreover, an injunction will help prevent the erosion of employee support while the Board renders its own decision. Additionally, the injunction will reverse most of Respondent's unlawful unilateral action, and facilitate the exchange of information. Because Respondent does not have authority to undo the transfer of the nurses' retirement plans, the Court refrains from issuing injunctive relief on this issue. *Kobell*, 965 F.2d at 1410 (noting that a Court must consider whether achieving status quo is possible).

## V. Respondent's Letter to the Court

Respondent filed a "Letter to the Court," informing the Court that another hearing before an Administrative Law Judge had been conducted. Respondent specified that it "has not requested, and does not intend to request, leave to present the Court with the record recently developed before Judge Carter." ECF No. 59 at PageID #: 6257. Petitioner did not file a response to this Letter.

To the extent the Letter was meant to be a motion, it is denied. The Court determined that it would decide this matter on the Administrative Record. Petitioner has sufficiently demonstrated reasonable cause to believe that violations of the Act have occurred, and that injunctive relief is just and proper. As it is not the role of the Court to resolve factual disputes, make credibility determinations, or decide the merits of the unfair labor practice charges at this stage, *Schaub*, 250 F.3d at 970, and parties have already had sufficient opportunity to present evidence, the Court denies the presumptive motion.

## VI.  Conclusion

For the foregoing reasons, the Court grants the Petition for temporary injunction. Within seven days of this Order, Respondent is ordered to take the following actions:

(a) Upon request, bargain in good-faith with the Union as the exclusive collective bargaining representative of employees in the Unit during the interim period concerning employees' terms and conditions of employment and, if an understanding is reached, embody the understanding in a written, signed agreement.

(b) Furnish the Union with the information it requested concerning the QHC spinoff including:

(i) QHC's address;

(ii) a list of QHC's current or proposed Board of Directors or Trustees;

(iii) names and contact information of QHC's CEO, HR Director and Director of Labor Relations;

(iv) an organizational charge showing the directors, officers and key employees of QHC;

(v) copies of QHC work rules, employment manuals as well as other policies and/or codes of conduct that apply or will apply to bargaining unit members at QHC hospitals;

(vi) a list of all persons with authority to review, modify or rescind the policies listed above, along with their job titles and office addresses;

(vii) current and/or proposed staffing plans for QHC operated facilities;

(viii) a list and contact information of all persons with authority to review, modify the staffing plans;

(ix) a complete description of health, dental, short and long term disability and life insurance plans and benefits for nurses at those facilities that CHS intends to transfer to QHC;

(x) a complete description of retirement benefits at those facilities that CHS intends to transfer to QHC;

(xi) copies of any agreements for administrative services, including those related to the administration of payroll and benefits between QHC and CHS;

(xii) a list of all CHS hospitals that will be party of the proposed QHC spinoff, as well as a list of their directors, officers and key employees.

(c) Furnish the Union with the requested information pertaining to the discharge of Michelle Hastings and Tara Magrell as set forth in the Union's September 2, 2015 and November 13, 2015 requests, and, on request, bargain in good faith with the Union over the discharges of Magrell and Hastings;

(d) Upon request from the Union, rescind the offer of employee group discounts offered through QHC Benefits Plus, and the offer for long term care insurance to employees in the Unit;

(e) Upon request, bargain in good faith with the Union on a schedule providing for good-faith bargaining for not less than twenty-four (24) hours per month and not less than six (6) hours per session, or another schedule to which Respondent and the Union have mutually agreed, until they reach a complete collective bargaining agreement or a good-faith impasse in bargaining;

(f) Post copies of the District Court's Order at the Respondent's Massillon, Ohio facility in all locations where other notices to employees are customarily posted, maintain these postings during the Board's administrative process free from all obstructions and defacement and grant to agents of the Board reasonable access to these facilities in order to maintain compliance with the posting requirements;

(g) Within ten (10) days of the District Court's interim Order, hold a meeting or meetings at Respondent's facility, scheduled to ensure the widest possible audience, at which a

responsible management official shall read, or at Respondent's option, a Board Agent shall read in the presence of a responsible management official, the District Court's Order;

(h) Within (20) days of the issuance of the District Court's Decision and interim Order, file with the Court and serve a copy upon the Regional Director of Region Eight of the Board, a sworn affidavit from a responsible official of Respondent, setting forth with specificity, the manner in which Respondent has complied with the terms of the Court's Order, including how and when it posted the documents required by the Order.


IT IS SO ORDERED.


September 5, 2017                         _/s/ Benita Y. Pearson_____
Date                                                    Benita Y. Pearson
                                                          United States District Judge